IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | NO. 06-cr-690-01 |
| | : | |
| LAN DANG | : | |

MEMORANDUM

**KENNEY, J.**                                                                 **NOVEMBER 26, 2025**

Before the Court is Defendant Lan Dang's ("Mr. Dang" or "Defendant") *Pro Se* Motion for Reduction in Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 559 (the "Motion") at 2. Upon review of the Motion, the Government's Response (ECF No. 562), the *Pro Se* Reply (ECF No. 564), the Counseled Reply (ECF No. 567), the Government's Sur-reply (ECF No. 568), the Counseled Sur-reply (ECF No. 571), and the parties' argument at the July 23, 2025 hearing (ECF Nos. 579, 581), the Court will **GRANT** the Motion (ECF No. 559) in part and **DEFER FURTHER DECISION** in part. The Motion is granted insofar as Mr. Dang seeks a finding that his circumstances, when taken together, constitute an extraordinary and compelling reason for a reduction in sentence. The Court's ruling on the Motion is otherwise deferred until the Court makes its decision on whether a sentence reduction is warranted under the 18 U.S.C. § 3553(a) factors, and on the question of whether Mr. Dang poses a danger to others or the community. An appropriate order will follow.

I.  **BACKGROUND**

Between January 1, 2006 and October 20, 2006, Mr. Dang conspired to import and imported large quantities of ecstasy (also known as "MDMA") into the United States from Canada and conspired to launder monetary instruments. 2025 Presentence Investigation Report ("2025

1

Revised PSR") ¶¶ 2–4, 9, 13–14.  During this period, Mr. Dang supplied and trafficked approximately 138,000 ecstasy pills to his co-defendants in the U.S. (four shipments: 20,000 pills, 20,000 pills, 38,000 pills, and 60,000 pills), and he "is accountable for laundering approximately $190,000 in United States currency." *Id.* ¶¶ 13, 28.

In early October 2006, Mr. Dang supplied approximately 60,000 ecstasy pills to his co-defendant Minh Thanh La in Philadelphia, Pennsylvania.  *Id.* ¶ 15.  In the early hours of October 20, 2006, La and other co-defendants discussed that a portion of this shipment would be taken down to Atlanta, Georgia, for distribution.  *Id.* ¶¶ 18–19.  While traveling to Atlanta, law enforcement stopped two of Mr. Dang's co-defendants—Vutha Kao and Jeremy Warren—and found a machine gun under the passenger seat of the vehicle they were using to transport a shipment of MDMA.  *Id.* ¶¶ 19–22.  After law enforcement obtained a search warrant for the vehicle, a subsequent search uncovered a cardboard box with "numerous plastic bags" containing MDMA pills that Mr. Dang had supplied from Canada.  *Id.* ¶ 24.  45,649 tablets of MDMA, weighing 13.47 kilograms, were recovered.  *Id.* ¶ 25.  On November 16, 2006, U.S. Customs and Border Protection detained Mr. Dang as he tried to enter the U.S. from Canada, and he was subsequently arrested by U.S. Immigration and Customs Enforcement agents.  *Id.* ¶ 27.

On October 10, 2007, a grand jury returned a superseding indictment charging Mr. Dang with conspiracy to import MDMA, in violation of 21 U.S.C. § 963 (Count 1); importation of MDMA, in violation of 21 U.S.C. §§ 952 and 960 (Count 2); and conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(h) (Count 4).  2025 Revised PSR ¶¶ 2–3.  The case proceeded to trial, and on December 10, 2007, the jury found Mr. Dang guilty of all three counts.  *Id.* ¶ 4.

At the subsequent sentencing stage of the criminal proceedings, U.S. Probation was tasked with determining the applicable base offense level to calculate a sentencing guideline for Mr. Dang.  In the original Pre-Sentence Investigation Report, the assigned U.S. Probation Officer determined a base offense level of 36 and applied a two-level enhancement for the money laundering offense, a four-level enhancement for Mr. Dang's leadership role in the offense, and a two-level enhancement for obstruction of justice for attempting to induce a witness not to testify against him, resulting in an adjusted offense level of 44.  2008 Presentence Investigation Report ("2008 PSR") ¶¶ 52–57.  Based on Mr. Dang's total offense level of 44 and his criminal history category of I, the Probation Office determined that his guideline range was life imprisonment.  *Id.* ¶ 90.  However, the statutory maximum penalty for Dang's offenses was 60 years (720 months' imprisonment), and "the effective guideline range [became] 720 months."  *Id.*  On October 8, 2008, the court sentenced Mr. Dang to 480 months' (40 years') imprisonment.  2025 Revised PSR ¶ 4.

Mr. Dang is now 70 years old and is currently serving his sentence at FCI Thomson in Thomson, Illinois, with an anticipated release date of January 27, 2041.  *Id.* at 3, ¶ 4.  As of the date of this Memorandum Opinion and Order, Mr. Dang has served nearly 19 years of his sentence.  *Id.*

## II. PROCEDURAL HISTORY

Defendant previously moved for a reduction in sentence in both 2015 and 2021.  In 2015, Mr. Dang moved for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 782 to the Sentencing Guidelines on the grounds that he was eligible for a retroactive two-level reduction to his offense level.  ECF Nos. 459, 461.  However, the Court denied this motion and upheld the 480-month sentence.  *See* ECF Nos. 461, 504.  Thereafter, on January 8, 2021, Dang moved for a reduction in sentence based on the threat of COVID-19, *see* ECF No. 543, and the

Court likewise denied this motion on the grounds that he did not have a medical condition placing him at elevated risk.  ECF No. 546.

The instant matter was reassigned from the calendar of the Honorable J. Curtis Joyner to this Court on July 28, 2021.  ECF No. 547.  On September 23, 2024, Mr. Dang filed the instant *pro se* Motion.  *See* ECF No. 559.  On September 25, 2024, the Court referred the Motion to the Federal Community Defender Office for the Eastern District of Pennsylvania.  *See* ECF No. 560.  The Government filed its response to the Motion on November 4, 2024.  *See* ECF No. 562.  On November 15, 2024, the Court added Attorney Susan M. Lin, Esq. as counsel for Defendant and ordered that a counseled reply to the Government's response be filed.  *See* ECF No. 563.  Mr. Dang filed a *pro se* reply to the Government's response on December 2, 2024, *see* ECF No. 564, and a counseled reply on January 6, 2025, *see* ECF No. 567.  The Government filed its sur-reply shortly thereafter on January 7, 2025, *see* ECF No. 568, and the Defendant his counseled sur-reply on February 7, 2025, *see* ECF No. 571.

Upon completion of the briefing, the Court ordered a revised Presentence Investigation Report from U.S. Probation.  *See* ECF Nos. 574–75.  It then scheduled oral argument on the Motion for June 2025.  *See* ECF No. 576.  The Court ultimately held oral argument on the Motion on July 23, 2025, *see* ECF Nos. 579, 581, and ordered a supplemental presentence investigation report thereafter on July 29, 2025, *see* ECF No. 580.  The Court received the supplemental presentence investigation report, which included a supplemental guideline calculation, on September 11, 2025, and the Motion is now ripe for review.

**III.   LEGAL STANDARD**

Under 18 U.S.C. § 3582(c)(1)(A), the Court "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not

4

exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The accompanying policy statement, U.S.S.G. § 1B1.13, further specifies that the Court must make a finding that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2). "A grant of compassionate release is a purely discretionary decision." *United States v. Stewart*, 86 F.4th 532, 534 (3d Cir. 2023).

## IV.   DISCUSSION

Section 1B1.13(b) of the United States Sentencing Guidelines provides guidance on the extraordinary and compelling reasons that may warrant granting a sentence reduction. U.S.S.G. § 1B1.13(b). Most relevant here is § 1B1.13(b)(5), which states that extraordinary and compelling reasons exist where "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4) [of § 1B1.13(b)], are similar in gravity to those described in paragraphs (1) through (4)" of § 1B1.13(b). *Id.* For the reasons that follow, the Court finds that Mr. Dang has shown a "combination of circumstances" that are similar in gravity to those otherwise enumerated in § 1B1.13(b), thereby establishing an "extraordinary and compelling reason" for a reduction in sentence.

### A. *Ecstasy in the Sentencing Guidelines*

In assessing whether an extraordinary and compelling reason exists for a reduction in Mr. Dang's sentence, the Court first turns to the foundation for the current converted drug weight ratio[1] for ecstasy offenses. At the time of the 2008 sentencing, Mr. Dang's base offense level was largely driven by the marijuana equivalency ratio associated with MDMA/ecstasy. *See* 2008 PSR ¶¶ 51–61 ("In this case, this underlying offense is drug trafficking, in violation of 21 U.S.C. § 952 and 960(a) and (b), which is found in U.S.S.G. § 2D1.1 and calls for a base offense level of 36. This is based on the fact that, as part of the conspiracy, approximately 138,000 MDMA pills weighing 18,360 kilograms of marijuana equivalent were imported."). To get to this figure, the Probation Officer converted the "drug quantity . . . to a marijuana equivalent, as MDMA is not specifically referenced in the Drug Quantity Table" contained in the Sentencing Guidelines. *Id.* ¶ 51. The marijuana equivalent figure was converted "on a scale of one gram of MDMA to 500 grams of marijuana." *Id.*

The origins of the 500:1 ratio date back to 2000. Prior to 2000, the going drug ratio for ecstasy offenses was 35:1, that is, one gram of ecstasy equaled 35 grams of marijuana equivalent. *See United States v. Sepling*, 944 F.3d 138, 146–47 (3d Cir. 2019). In 2000, "Congress enacted the Ecstasy Anti-Proliferation Act . . . in response to demands that it address the rapidly escalating abuse of ecstasy." *Id.* The Sentencing Commission, also in response to the growing discontent regarding ecstasy offenses, increased the equivalency ratio from 35:1 to 500:1, meaning

---

[1] "The May 1, 2008, edition of the Guidelines Manual, used at the time of the sentencing hearing on October 8, 2008, used the marijuana equivalent when determining the base offense level using the Drug Conversion Tables found in §2D1.1. In 2018, the Commission amended §2D1.1 to replace marihuana as the conversion factor with the new term 'converted drug weight' and to change the title of the Drug Equivalency Tables to the 'Drug Conversion Tables.'" 2025 Revised PSR ¶ 41 & n.4.

that one gram of ecstasy equaled 500 grams of marijuana equivalent, in 2001. *See id.* at 147. The 500:1 ratio has remained part of the Sentencing Guidelines ever since.

However, and as detailed by the Third Circuit in *Sepling*, the 500:1 ratio has drawn sharp criticism since its enactment. *See id.* at 147–48; *see also United States v. Qayyem*, No. 10-cr-19, 2012 WL 92287, at *3–*5 (S.D.N.Y. Jan. 11, 2012) (challenging basis for 500:1 ratio); *United States v. McCarthy*, No. 09-cr-1136, 2011 WL 1991146, at *2–*5 (S.D.N.Y. May 19, 2011) (same). Indeed, the Sentencing Commission relied heavily upon one scientific study to justify the 500:1 ratio that was ultimately debunked, and there otherwise exists a host of "scientific and academic research supporting an argument that MDMA is not as harmful as the Commission proposed when selecting the ratio in 2001." *Sepling*, 944 F.3d at 147. More recently, a study published by the CDC on August 28, 2025 found that, "[a]mong 309,274 overdose deaths during January 2021–June 2024 in 49 states and DC, . . . . 3,4-methylenedioxymethamphetamine (MDMA)/3,4-methylenedioxyamphetamine (MDA) (0.4%) were rarely involved." Lauren J. Tanz, ScD et al., *Drug Overdose Deaths Involving Stimulants – United States, January 2018 – June 2024*, Ctr. For Disease Control Morbidity and Mortality Wkly. Rep. (Aug. 28, 2025), https://www.cdc.gov/mmwr/volumes/74/wr/mm7432a1.htm [https://perma.cc/9CWN-RZSM].

With the above in mind, the Court takes the opportunity raised by *Sepling* to call into question the empirical basis for the 500:1 ratio and finds its foundations questionable at best. Applying this skepticism to the case at hand, Mr. Dang's original 720-month guideline range was dictated almost wholly by the questionable ratio. 2008 PSR ¶¶ 51–52. Accordingly, the Court considers the lack of solid justification for the ratio as one factor in its extraordinary and compelling analysis. And, upon review of the caselaw, this Court is not alone in finding that a ratio higher than 35:1 which reflects the dangers of ecstasy without overstating its negative

7

effects—such as the 200:1 cocaine converted drug weight ratio—may be a more appropriate substitute. *See Qayyem*, 2012 WL 92287, at *5; *McCarthy*, 2011 WL 1991146, at *5; *see also Sepling*, 944 F.3d at 148 (acknowledging the 200:1 ratio).

This does not mean, however, that the Court takes issue with the *length* of Mr. Dang's original sentence per se, nor the applicability of the Sentencing Guidelines generally. And the Court does not view the lack of justification *standing alone* as an extraordinary and compelling reason for release. Instead, the Court specifically finds that the lack of foundation for the 500:1 ratio—probed most recently by the Third Circuit in *Sepling*—constitutes an extraordinary and compelling reason for a reduction in sentence *in combination with* Mr. Dang's age, health, and rehabilitation.

B. *Age and Health*

Mr. Dang is now 70 years old, and he likely will not be released until he is 86 years old. ECF No. 567 at 12. His mobility is limited, and he suffers from coronary artery disease, high blood pressure, and atrial fibrillation. *Id.* at 17. "He has developed blood clots . . . during his incarceration" and he has sought medical attention outside of the prison facility by making "recent trips between June 15, 2021, and December 18, 2023, and an admission/release on April 10, 2023, to a 'local hospital.'" 2025 Revised PSR ¶¶ 71–72. Mr. Dang's health complications are likely to grow progressively worse with age, and while he is currently classified as a "CARE2 inmate" by the Bureau of Prisons, *see id.* ¶ 72 & n.7, it is feasible that his 480-month sentence is likely to become a life sentence. *See, e.g., United States v. Ali*, 738 F. Supp. 3d 584, 590–91 (E.D. Pa. 2024) ("[A]s part of the overall analysis of whether there are extraordinary and compelling circumstances, I note the combination of Ali's age (sixty-three), coupled with his numerous medical conditions and the deteriorating nature of his back pain. Ali still faces approximately

thirteen to fourteen more years in prison, which will make him close to eighty at the time of release. Given his multiple ailments, the full length of his imprisonment could feasibly constitute a life sentence."). Mr. Dang's age and health are therefore also considered as a factor in the extraordinary and compelling reason analysis.

### C. *Rehabilitation*

Although Congress has directed that "[r]ehabilitation of the defendant **alone** shall not be considered an extraordinary and compelling reason," 28 U.S.C. § 994(t) (emphasis added), the record shows that Mr. Dang has committed himself to substantial rehabilitative efforts over his 18-plus years in BOP custody, and such efforts weigh in favor of the Court's finding that an extraordinary and compelling reason for a reduction in sentence exists. *See United States v. Rodriguez*, 451 F. Supp. 3d 392, 405 (E.D. Pa. 2020) (considering rehabilitation in connection with other factors to find extraordinary and compelling reasons); *United States v. Grier*, No. 07-cr-209, 2021 WL 1854503, at *3 (M.D. Pa. May 10, 2021) (same). His disciplinary infractions are limited, and he currently serves as a unit orderly. ECF No. 567 at 15. He has finished paying his financial obligations. *Id.* He has taken over 30 educational classes and earned his GED/High School Diploma while incarcerated. *See* ECF No. 559 at 27. Considering his time served, the Court finds the rehabilitative efforts commendable and extraordinary, especially when considered in combination with the aforementioned factors.

* * *

Taken together, the above factors constitute an extraordinary and compelling reason for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A)(i). But this is just the first step in the Court's inquiry. Once the Court is satisfied that extraordinary and compelling reasons exist, it then is tasked with considering whether a reduction is consistent with the 18 U.S.C. § 3553(a)

factors, and whether the defendant is a danger to the safety of others and/or the community. *See supra* Section III. Should the Court determine that a sentence reduction is warranted under the § 3553(a) factors and that Mr. Dang does not pose a continuing danger to the community or others, the Court is then tasked with determining the appropriate sentence reduction.

The Court now has the benefit of the supplemental presentence investigation report from U.S. Probation, which calculates an advisory guideline range for Mr. Dang using 200:1—the cocaine ratio—as the drug conversion ratio. *See* September 2025 Supplemental Presentence Investigation Report ("2025 Supp. PSR") at ¶ 41 & n.5. Under the 200:1 ratio, Mr. Dang's new sentencing guideline range is 292 months to 365 months' imprisonment (the "200:1 Guideline Range"). *Id.*

## V. CONCLUSION

The Defendant's briefing addressed the § 3553(a) factors and the question of whether Mr. Dang is a danger to others or the community. *See, e.g.*, ECF No. 567 at 16–19. The Government did not directly address the factors, having focused its arguments on the "extraordinary and compelling reasons" prong of the analysis. The Court will, therefore, afford the Government an opportunity to brief these issues, keeping in mind the 200:1 Guideline Range. The Government need not brief its objection to the use of the 200:1 ratio further, as the objection is properly lodged in the Supplemental PSR, *see* 2025 Supp. PSR at 25, and the parties argued the viability of the 500:1 ratio at the motion hearing on July 23, 2025, *see* ECF No. 581 at 29–33. As indicated above, the Court overrules the objection.

An accompanying order will follow.

BY THE COURT:

/s/ Chad F. Kenney

---

**CHAD F. KENNEY, JUDGE**